# EXHIBIT 2

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF KALAMAZOO**

SCOTTSDALE CAPITAL ADVISORS CORP.,
an Arizona corporation,

    Plaintiff,

v.

MORNINGLIGHTMOUNTAIN, LLC, a
Michigan limited liability company d/b/a
GoodeTrades.com; MICHAEL GOODE, an
individual; and DOES 1-10, inclusive,

    Defendants.

Case No: 18-0153-CZ
Hon. Alexander C. Lipsey



FILED
APR 2 0 2018
9TH CIRCUIT COURT
COUNTY OF KALAMAZOO
KALAMAZOO, MICHIGAN

**PLAINTIFF'S FIRST COMPLAINT AND JURY DEMAND**

Plaintiff Scottsdale Capital Advisors Corp., for its Complaint against MorningLightMountain, LLC d/b/a GoodeTrades.com and Michael Goode, alleges as follows:

**INTRODUCTION**

1. Plaintiff Scottsdale Capital Advisors Corp. ("SCA") is a successful securities broker-dealer.

2. In an effort to smear SCA's reputation, MorningLightMountain, LLC d/b/a GoodeTrades.com and Michael Goode (collectively, "Defendants") published two articles on their website, www.goodetrades.com, on April 17, 2017 and June 14, 2017 which contained numerous false, defamatory, and highly misleading statements of and concerning SCA. Among other things, the articles falsely alleged that SCA is involved in penny stock "pump and dump" schemes and improperly permits the trading of penny stocks.

3. By this action, SCA seeks to clear its good name and hold Defendants liable for the harm caused by their misconduct.

## THE PARTIES

4. Plaintiff Scottsdale Capital Advisors Corp. is, and at all times relevant hereto was, a corporation organized under the laws of the State of Arizona, with its principal place of business in Maricopa County, Arizona.

5. SCA is informed and believes and based thereon alleges that Defendant MorningLightMountain, LLC d/b/a GoodeTrades.com ("MorningLightMountain") is, and at all times relevant hereto was, a corporation organized under the laws of the Michigan, with its principal place of business in Eaton County, Michigan. SCA is informed and believes and based thereon alleges that MorningLightMountain owns and operates the website goodetrades.com.

6. SCA is informed and believes and based thereon alleges that Defendant Michael Goode ("Goode") is an individual who resides in Kalamazoo County, Michigan. Upon information and belief, Goode is the sole owner and officer of Defendant MorningLightMountain.

7. SCA is informed and believes and based thereon alleges that the fictitiously-named defendants sued herein as Does 1 through 10, and each of them, are in some manner responsible or legally liable for the actions, events, transactions and circumstances alleged herein. The true names and capacities of such fictitiously-named defendants, whether individual, corporate, or otherwise, are presently unknown to SCA, and SCA will seek leave of Court to amend this Complaint to assert the true names and capacities of such fictitiously-named defendants when the same have been ascertained. For convenience, each reference to a named defendant herein shall also refer to Does 1 through 10. All defendants, including

MorningLightMountain, LLC d/b/a GoodeTrades.com, Michael Goode, and those referred to herein as Does 1 through 10, are collectively referred to herein as "Defendants."

## JURISDICTION AND VENUE

8. This Court has personal jurisdiction over Defendants because they have minimum contacts with the State of Michigan, and defendant Goode is a domiciliary of the State of Michigan.

9. Venue in Kalamazoo is proper because Defendant resides in Kalamazoo County.

10. The amount in controversy exceeds Twenty Five Thousand Dollars ($25,000.00) exclusive of interest, costs, and attorney fees and the matter is otherwise within the jurisdiction of this Court.

## FACTS COMMON TO ALL CAUSES OF ACTION

11. Founded in 2002, SCA is a full service broker-dealer focused on serving the microcap securities market, often referred to as the OTC market. In this time, SCA has grown to become one of the dominant companies in the OTC market, with more than $125 million worth of trades in 2015.

12. On April 17, 2017, Defendants published an article written by Goode on the website goodettrades.com, entitled "FINRA fines Scottsdale Capital Advisors $1.5 million" (the "April Article"): https://www.goodetrades.com/2017/04/finra-fines-scottsdale-capital-advisors-1-5-million/. A true and correct copy of the April Article is attached hereto as **Exhibit 1** and incorporated by this reference.

13. The April Article contained numerous statements that are defamatory and outright false, including:

    a. **False Statement #1:** "If you have followed penny stocks and pump and dumps

for a few years then you know Scottsdale Capital Advisors."

In truth, SCA has never been involved in any "pump and dump" schemes, has never been a defendant in any "pump and dump" lawsuits, and has never been convicted of engaging in "pump and dump" activity.

    b.    **False Statement #2:** "They [SCA] are one of the few brokers left that have continued to allow the deposit and sale of shares of illiquid penny stocks. Larger brokers and discount brokers stopped allowing that over five years ago."

In truth, numerous large brokers continue to trade in penny stocks, including without limitation, interactive brokers, Merrill Lynch, Charles Schwab, Scottrade, Cor Clearing, and TradeKing.

    c.    **False Statement #3:** "When the big Biozoom (BIZM) pump happened back in 2013 many of the frozen accounts were at Scottsdale Capital."

In truth, only a handful of accounts at SCA were frozen as a result of Biozoom trading. Moreover, SCA has never been a defendant in any lawsuit involving the trading of Biozoom stock.

    14.    On June 14, 2017, Defendants published a second article written on goodetrades.com by Goode, entitled "SEC Sues Alpine Securities, continuing a run of bad news for owner John Hurry" (the "June Article"): https://www.goodetrades.com/2017/06/ sec-sues-alpine-securities-continuing-a-run-of-bad-news-for-owner-john-hurry/. A true and correct copy of the June Article is attached hereto as **Exhibit 2** and incorporated by this reference.

    15.    The June Article contains statements that are defamatory and outright false, including:

    a.    **False Statement #1:** "Lest anyone think that these are just minor paperwork

deficiencies with no real consequences, I remind you that one pump and dump alone, Biozoom (BIZM) led to over $17 million in fraudulent profits for manipulators / insiders, and many of their accounts were at Scottsdale Capital Advisors."

In truth, other than hosting a handful of accounts that traded in Biozoom shares, SCA had nothing to do with the trading of Biozoom shares. Moreover, as discussed above, SCA has never been involved in any "pump and dump" schemes (including any "pump and dumps" involving Biozoom shares), has never been a defendant in any "pump and dump" lawsuits, and has never been convicted of engaging in "pump and dump" activity.

16. On September 21, 2017, SCA's counsel sent a letter to Defendants identifying the foregoing false statements in the April Article and June Article (collectively, the "Articles"), and demanding that Defendants remove each one and publish a retraction, correction, and apology as to each of those statements. Defendants have failed and refused to comply with SCA's demand.

17. The false, defamatory, and highly misleading statements written and published by Defendants have caused and are continuing to cause SCA economic harm and damage to its reputation. Accordingly, SCA has no alternative but to file this lawsuit for compensatory damages, punitive damages, and injunctive relief, as explained more fully herein.

### COUNT ONE
### (Against All Defendants)
### (Defamation)

18. SCA incorporates by reference all of the preceding paragraphs as though fully restated herein.

19. Defendants wrote and published the defamatory statements of fact about SCA referred to in Paragraphs 13 and 15 herein (collectively, the "Defamatory Statements").

20. The Defamatory Statements are false. Moreover, the statements, individually and jointly, tend to so harm the reputation of Plaintiff as to lower its reputation in the community or deter third persons from associating or dealing with it.

21. The Defamatory Statements involve materially false implications.

22. The Defamatory Statements have caused SCA to be damaged.

23. Defendants have refused to retract, correct or apologize for the Defamatory Statements after being given notice and ample time to do so.

24. As a direct and proximate result of Defendants' conduct, SCA has suffered damages to its reputation and business interests in an amount to be determined at trial, and in an amount not less than the jurisdictional minimum of this Court. SCA's damages may also be presumed because the Defamatory Statements impute to SCA offenses regarded by public opinion as involving moral turpitude, and unfitness for the proper conduct of its lawful business, trade, and profession.

25. SCA is a private figure for purposes of a defamation analysis.

26. Notwithstanding SCA's status as a private figure, at the time the Defamatory Statements were published, Defendants knew the Defamatory Statements were false and/or acted in reckless disregard of whether the Defamatory Statements were true or false. As such, in addition to compensatory damages and/or presumed damages, SCA is entitled to an award of punitive damages in an amount to be determined at trial.

COUNT TWO
(Against All Defendants)
(Invasion of Privacy: False Light)

27. SCA incorporates by reference all of the preceding paragraphs as though fully restated herein.

28. Defendants' publication of the Defamatory Statements also caused there to be publicity concerning SCA that placed SCA in a false light in the public eye.

29. By publishing the Defamatory Statements, Defendants broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to SCA characteristics and/or conduct that were false and placed SCA in a false position.

30. At the time Defendants published statements, they knew the Defamatory Statements were false and/or acted in reckless disregard as to the falsity of the publicized matter and the false light in which SCA would be placed.

31. Defendants' conduct was not for any proper purpose, nor was it within the scope of Defendants' authority or otherwise immune or privileged.

32. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be determined at trial, and in an amount not less than the jurisdictional minimum of this Court.

33. Defendants' conduct deliberately and intentionally injured the Plaintiff; their acts were willful and malicious and are not dischargeable in bankruptcy.

## JURY TRIAL DEMAND

SCA hereby demands a jury trial of all issues in this case.

## PRAYER FOR RELIEF

WHEREFORE, SCA requests that judgment be entered against the Defendants, and each of them, as follows:

A. For compensatory, consequential, exemplary, and punitive damages in an amount to be determined at trial;

  B. For pre- and post-judgment interest on the foregoing sum at the highest lawful rate from entry of judgment until paid in full;

  C. For an injunction enjoining further publication of the Defamatory Statements;

  D. For SCA's costs of suit; and

  E. For all other relief the Court deems appropriate.

Dated: April 19, 2018      Respectfully submitted,

           **DEBORAH GORDON LAW**

           By _/s/ D. L. Gordon_
           Deborah L. Gordon (P27058)
           Attorney for Plaintiff
           33 Bloomfield Hills Parkway, Suite 220
           Bloomfield Hills, Michigan 48304
           (248) 258-2500
           dgordon@deborahgordonlaw.com

*AND*

H. Rhett Pinsky (P18920)
Pinsky, Smith, Fayette & Kennedy LLP
146 Monroe Center Street, NW, Suite 805
Grand Rapids, Michigan 49503
(616) 451-8496
hpinsky@psfklaw.com

           HARDER LLP

           By _/s/ Charles J. Harder_
           Charles J. Harder (*pro hac vice* to be filed)
           Jordan Susman (*pro hac vice* to be filed)
           132 S. Rodeo Drive, Fourth Floor
           Beverly Hills, California 90212
           Attorneys for Plaintiff

# GOODE TRADES
The Best Source for Stock Promotion & Penny Stock News and Insight

## FINRA fines Scottsdale Capital Advisors $1.5 million

April 17, 2017 | By Michael Goode | All Categories, Fraud, Microcap, SEC actions

If you have followed penny stocks and pump and dumps for a few years then you know Scottsdale Capital Advisors (hereafter referred to as Scottsdale Capital). They are one of the few brokers left that have continued to allow the deposit and sale of shares in illiquid penny stocks. Larger brokers and discount brokers stopped allowing that over five years ago. When the big Biozoom (BIZM) pump happened back in 2013 many of the frozen accounts were at Scottsdale Capital.

On March 31st, FINRA fined Scottsdale Capital $1.5 million. Unfortunately I cannot find any public posting of that news so the prior link is to a Stockwatch article (full article only available to subscribers; see this copy if not a subscriber). In addition to the fine, John Hurry, owner of Scottsdale Capital, was permanently banned from working in the securities industry.

The full 111-page FINRA decision can be found on their website. Unfortunately FINRA prevents direct-linking so you need to go to http://disciplinaryactions.finra.org/Search/ and then enter "John Hurry" as the name. I have downloaded a copy of the decision in case they delete it.

Excerpt from the decision:

> Hurry's violation of his duty to observe high standards of commercial honor and just and equitable principles of trade was purposeful and egregious. These two qualities lead us to conclude that Hurry is a threat to investors and the integrity of the markets. Our concern is compounded by our credibility findings. We found that he repeatedly testified falsely, and that there was a pattern of doing so when he thought no contradictory evidence would come to light.
>
> When misconduct is intentional, General Principle 1 provides that adjudicators should 572 assess sanctions that exceed the recommended range in the Guidelines. Principal Consideration 13 also focuses on whether a respondent's misconduct is the result of an intentional act, recklessness, or negligence.573 When a violation is egregious, the Guidelines often suggest more severe sanctions. In egregious cases in connection with violations of Rule 2010 and Section 5, the specific Guidelines recommend that an individual be suspended for up to two years or barred.
>
> Even though he has no disciplinary history, the devious nature of Hurry's violation evidences disregard for regulatory requirements, an aggravating factor under General Principle 2 and Principal Consideration 10.574 We have no confidence that if he remained in the securities industry he would not again devise a way to evade the law and regulatory requirements. For this reason also, we believe Hurry is a threat to the investing public.

The decision also shows just how remunerative running Scottsdale Capital has been for Hurry — in 2014 he and his wife made "approximately $6.2 million in directors' fees and $1.45 million in net income."

*Disclaimer. No position in any stocks mentioned and I have no relationship with anyone mentioned in this post. This blog has a terms of use that is incorporated by reference into this post; you can find all my disclaimers and disclosures there as well.*

# GOODE TRADES
The Best Source for Stock Promotion & Penny Stock News and Insight

# SEC Sues Alpine Securities, continuing a run of bad news for owner John Hurry

June 14, 2017 | By Michael Goode | All Categories, All Categories, Fraud, Microcap, SEC actions, Stock Promotions

As I wrote back in April, FINRA fined Scottsdale Capital Advisors $1.5 million for doing a really poor job at preventing illegal sales by penny stock insiders (FINRA Rule 2010). The owner, John J. Hurry, was barred from the industry. The full 111-page FINRA decision can be found on their website. Unfortunately FINRA prevents direct-linking so you need to go to http://disciplinaryactions.finra.org/Search/ and then enter "John Hurry" as the name. I have downloaded a copy of the decision in case they delete it.

From the FINRA report:

> The Respondent firm violated FINRA Rule 2010 by selling securities without registration and without an exemption, in contravention of Section 5 of the Securities Act of 1933. The firm's owner, Respondent John Hurry, also violated Rule 2010, because he engaged in activities designed to enable the unlawful transactions and evade regulatory scrutiny.
>
> The Respondent firm and its Chief Compliance Officer, Respondent Timothy DiBlasi, violated NASD Rules 3010(a) and (b) and FINRA Rule 2010 by failing to establish and maintain a supervisory system, including written supervisory procedures, reasonably designed to ensure that the firm complied with Section 5 of the Securities Act.
>
> The Respondent firm and its President, Respondent Michael Cruz, violated NASD Rule 3010(b) and FINRA Rule 2010 by failing to supervise and failing to respond appropriately to numerous red flags indicative of unlawful unregistered distributions.
>
> The Respondent firm is fined $1.5 million. Hurry is barred in all capacities. He would also be fined $100,000, but, in light of the bar, the fine is not imposed. DiBlasi is suspended for two years and fined $50,000. Cruz is suspended for two years and fined $50,000. In addition, Respondents are ordered to pay costs, for which they are jointly and severally liable.

From the same FINRA report, John "Hurry is a threat to the investment public." The SEC must agree because on June 5, 2017 they sued Alpine Securities, which is another broker specializing in penny stocks owned by John Hurry.

The FINRA report on Scottsdale and Hurry describes the close relationship among them, Alpine Securities, and CSCT, which was based in the Cayman Islands.

> Respondent Hurry thus owns and controls all three firms involved in the transactions at
> issue in this proceeding-Scottsdale, Alpine, and CSCT. In fact, the three firms were almost a
> self-contained system for processing and distributing microcap securities. CSCT did all its
> business through Scottsdale, and Scottsdale in turn did all its business with Alpine. Alpine's
> current CEO described Alpine as a small "boutique" clearing firm with a focus on the kind of
> business brought to it by CSCT. No independent third party was involved in



4/19/2018          SEC Sues Alpine Securities, continuing a run of bad news for owner John Hurry – Goode Trades

preparing,
approving, or clearing the deposits of stock certificates by CSCT at Scottsdale for resale.

SEC litigation release against Alpine Securities
SEC complaint against Alpine securities (PDF)

From the litigation release against Alpine Securities:

Securities and Exchange Commission v. Alpine Securities Corporation

Civil Action No. 7:17-CV-4179 (S.D.N.Y., filed June 5, 2017)

SEC CHARGES BROKERAGE FIRM WITH FAILING TO COMPLY WITH ANTI-MONEY LAUNDERING LAWS

Washington D.C., Jun. 5, 2017 – The Securities and Exchange Commission today charged a Salt Lake City-based brokerage firm with securities law violations related to its alleged practice of clearing transactions for microcap stocks that were used in manipulative schemes to harm investors.

To help detect potential securities law and money-laundering violations, broker-dealers are required to file Suspicious Activity Reports (SARs) that describe suspicious transactions that take place through their firms. The SEC's complaint alleges that Alpine Securities Corporation routinely and systematically failed to file SARs for stock transactions that it flagged as suspicious. When it did file SARs, Alpine Securities allegedly frequently omitted the very information that formed the bases for Alpine knowing, suspecting, or having reason to suspect that a transaction was suspicious. As noted in the complaint, guidance for preparing SARs from the U.S. Treasury Department's Financial Crimes Enforcement Network (FinCEN) clearly states that "[e]xplaining why the transaction is suspicious is critical."

The SEC's complaint charges Alpine Securities with thousands of violations of Section 17(a) of the Securities Exchange Act of 1934 and Rule 17a-8.

From the complaint, the SEC alleges:

This case concerns Alpine's practices relating to filing Suspicious Activity Reports ("SARs") with the U.S. Treasury Department's Financial Crimes Enforcement Network
("FinCEN"). Alpine acts as a clearing firm for many microcap over-the-counter ("OTC") stock
transactions. Since 2011, Alpine has cleared thousands of deposits of microcap securities, most
of them involving Scottsdale Capital Advisors Corp. ("Scottsdale") as the introducing broker,
and many of which were used as part of various stock manipulation and other schemes

Alpine's alleged failures with regard to filing suspicious activity reports (SARs) seem egregious:

Systematically omitting from at least 1,950 SARs material, "red-flag" information of
which it was aware and was required to report under its own BSA Compliance Program, such as a customer or issuer's criminal or regulatory history, evidence of
stock promotion, or whether a customer was a foreign financial institution, including
at least 1,150 SARs which included only the customer name, date of deposit, dollar
value of deposit, and the name of the security deposited;

- Filing SARs only on the deposit of stock in approximately 1,900 instances in which
the stock was subsequently liquidated, but failing to file required SARs on subsequent
related transactions such as the liquidation, or transfer of funds resulting from the
liquidation, even though it had identified the deposit of the security as suspicious; and
- Failing to file at least 250 SARs within the required 30 days after the date the suspicious activity was detected.

Alpine has previously been investigated and cited by FINRA for inadequate SARs in 2012 and 2015.

Lest anyone think that these are just minor paperwork deficiencies with no real consequences, I remind you that one pump and dump alone, Biozoom (BIZM), led to over $17 million in fraudulent profits for manipulators / insiders, and many of their accounts were at Scottsdale Capital Advisors.

One interesting thing I noticed: this lawsuit against Alpine Securities came on June 5th, which is exactly the day that the bar against a couple employees of Scottsdale Capital Advisors began. From the FINRA complain from April (emphasis mine):

V. CONCLUSION

The Firm, Scottsdale Capital Advisors, violated FINRA Rule 2010. Accordingly, it is ordered to pay a fine of $1.5 million. John J. Hurry violated FINRA Rule 2010. For his
misconduct he is barred from association with any FINRA member in any capacity. He would be
fined $100,000, but, in light of the bar, the fine is not imposed. Timothy B. DiBlasi violated
NASD Rules 3010(a) and (b) and FINRA Rule 2010. For his misconduct, he is suspended for
two years from association with any FINRA member in any capacity and fined $50,000. D.
Michael Cruz violated NASD Rule 3010(b) and FINRA Rule 2010. For his misconduct, he is
suspended for two years from association with any FINRA member in any capacity and fined
$50,000.

Respondents are also ordered to pay costs in the amount of $22,124.29, which includes a
$750 administrative fee and $21,374.29 for the cost of the transcript. If this decision becomes
FINRA's final disciplinary action, Hurry's bar will take immediate effect. **DiBlasi's and Cruz's
suspension will begin with the opening of business on June 5, 2017** The fines and assessed costs
shall be due on a date set by FINRA, but not sooner than 30 days after this decision becomes
FINRA's final disciplinary action in this proceeding.

*Disclaimer. I have no position in any stock mentioned above. I was long BIZM when trading in it was suspended by the SEC and lost money because of that. I have no relationship with any parties mentioned above. This blog has a terms of use that is incorporated by reference into this post; you can find all my disclaimers and disclosures there as well.*



4/19/2018  SEC Sues Alpine Securities, continuing a run of bad news for owner John Hurry – Goode Trades

## One thought on "SEC Sues Alpine Securities, continuing a run of bad news for owner John Hurry"



krs1 says:

June 14, 2017 at 4:22 pm

This is why you're a millionaire imo. Because you do what others don't! Nice work. Thanks for posting!

- Filing SARs only on the deposit of stock in approximately 1,900 instances in which
the stock was subsequently liquidated, but failing to file required SARs on subsequent
related transactions such as the liquidation, or transfer of funds resulting from the
liquidation, even though it had identified the deposit of the security as suspicious; and
- Failing to file at least 250 SARs within the required 30 days after the date the suspicious activity was detected.

Alpine has previously been investigated and cited by FINRA for inadequate SARs in 2012 and 2015.

Lest anyone think that these are just minor paperwork deficiences with no real consequences, I remind you that one pump and dump alone, Biozoom (BIZM), led to over $17 million in fraudulent profits for manipulators / insiders, and many of their accounts were at Scottsdale Capital Advisors.

One interesting thing I noticed: this lawsuit against Alpine Securities came on June 5th, which is exactly the day that the bar against a couple employees of Scottsdale Capital Advisors began. From the FINRA complain from April (emphasis mine):

V. CONCLUSION

The Firm, Scottsdale Capital Advisors, violated FINRA Rule 2010. Accordingly, it is ordered to pay a fine of $ 1.5 million. John J. Hurry violated FINRA Rule 2010. For his
misconduct he is barred from association with any FINRA member in any capacity. He would be
fined $100,000, but, in light of the bar, the fine is not imposed. Timothy B. DiBlasi violated
NASD Rules 3010(a) and (b) and FINRA Rule 2010. For his misconduct, he is suspended for
two years from association with any FINRA member in any capacity and fined $50,000. D.
Michael Cruz violated NASD Rule 3010(b) and FINRA Rule 2010. For his misconduct, he is
suspended for two years from association with any FINRA member in any capacity and fined
$50,000.

Respondents are also ordered to pay costs in the amount of $22,124.29, which includes a
$750 administrative fee and $21,374.29 for the cost of the transcript. If this decision becomes
FINRA's final disciplinary action, Hurry's bar will take immediate effect. **DiBlasi's and Cruz's
suspension will begin with the opening of business on June 5, 2017** The fines and assessed costs
shall be due on a date set by FINRA, but not sooner than 30 days after this decision becomes
FINRA's final disciplinary action in this proceeding.

*Disclaimer. I have no position in any stock mentioned above. I was long BIZM when trading in it was suspended by the SEC and lost money because of that. I have no relationship with any parties mentioned above. This blog has a terms of use that is incorporated by reference into this post; you can find all my disclaimers and disclosures there as well.*

